IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TFB MIDATLANTIC 4 LLC, et al., | : | Civil No. 1:21-CV-299 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Magistrate Judge Bloom) |
| | : | |
| THE LOCAL CAR WASH, INC.,[1] | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.   Introduction

This case comes before the court for consideration of the amount of damages that should be awarded to the defendants, The Local Car Wash, Inc., Treanor Properties, LLC, and John Treanor ("Treanor") (collectively, "the defendants"), on their counterclaims. The plaintiffs, TFB Midatlantic 4, LLC and TFB Midatlantic 4 RE, LLC (collectively, "the plaintiffs" or "TFB entities"), filed this action against the defendants

---

[1] The court notes that, in their filings, the defendants refer to Defendant The Local Car Wash, Inc. as "Local Car Wash, Inc."  For consistency purposes on the docket, the court will continue to refer to this defendant as "The Local Car Wash, Inc."

for breach of contract and other related claims. (Doc. 1). The plaintiffs' claims arose out of the purchase of a car wash in Chambersburg, Pennsylvania, in which the plaintiffs alleged that Treanor, the owner of the car wash, inflated revenue numbers to induce them to purchase the car wash. (Doc. 48). In response, the defendants asserted two counterclaims against the TFB entities—one for breach of the parties' promissory note, and one for breach of the parties' escrow agreement. (Doc. 49).

The court granted summary judgment in favor of the defendants on the plaintiffs' claims, finding that the defendants had not breached the contract or engaged in any fraudulent conduct related to the sale of the car wash. (Doc. 99). The court further granted summary judgment in favor of the defendants on their counterclaims. (*Id.*). The court then directed the parties to consult and confer regarding the issue of damages and held a telephone conference with the parties, at which time the court ordered the parties to submit briefing on the issue of damages. (Doc. 132). The parties have since submitted their briefing regarding the amount of damages owed to the defendants.  (Docs. 133–35, 137–38, 141–42).

Upon consideration of this matter, and as discussed more fully below, the court finds that the defendants are entitled to the following on their counterclaims: on Counterclaim I, breach of the promissory note, the defendants are entitled to an award of damages in the amount of $105,252.88; and on Counterclaim II, breach of the escrow agreement, the defendants are entitled to the release of the full $150,000 in escrowed funds—with the funds being used to pay The Local Car Wash, Inc.'s pre-existing tax liability in the amount of $81,215.45, as well as the additional penalties and interest incurred on that amount, and the remainder of the funds being released to the defendants—plus an award of damages in the exact amount that The Local Car Wash, Inc. incurred in additional penalties and interest on the pre-existing tax liability.

## II.   Background[2]

This matter arose out of the sale of a car wash in Chambersburg, Pennsylvania. The TFB entities agreed to purchase The Local Car Wash, Inc. from Treanor and his entities for a purchase price of $1.2 million in January of 2020. (Doc. 133-2, Ex. A at 2–29 (containing the purchase and

---

[2] The factual background of this Memorandum Opinion is taken from the parties' submissions to the extent they are consistent with the record.

sale agreement)). This agreement, which underwent a series of amendments (*see id.*, Ex. B and C), ultimately included a promissory note that was used to pay a portion of the $1.2 million purchase price (*id.*, Ex. B, at 31, 34; *id.*, Ex. C, at 40, 61).

The promissory note provides for a principal amount of $100,000 with a three percent interest rate to be paid over a period of eight years. (*Id.*, Ex. C, at 40, 61). In addition, the promissory note requires: equal monthly payments of principal and interest in the amount of $1,072.92, with the first payment due on February 1, 2021; the same monthly payment due on the last day of each succeeding month; and all principal interest due and payable in full on February 1, 2029. (*Id.* at 61). If "any payment" due under the note is not received within 30 days of the due date, then late charges equal to five percent of "such payment" are due upon demand. (*Id.*). Further, if any event of default occurs, the promissory note "become[s immediately due and payable" at the option of Treanor Properties, LLC. (*Id.* at 61–62). For purposes of the promissory note, an event of default includes, *inter alia*, the failure of TFB Midatlantic 4, LLC to make "any payment of principal or interest

when due and continues in such failure for a period of at least [15] days following" the delivery of written notice.  (*Id.*).

In addition, during an extensive due diligence period for the purchase of the car wash, the TFB entities learned that The Local Car Wash, Inc. had not paid sales and use taxes to the Commonwealth of Pennsylvania, relating to the operation of the car wash business, from 2017 to 2020.  Because, however, the full amount of the unpaid taxes was unknown at that time, the parties entered into an escrow agreement to ensure that the TFB entities would not ultimately be liable for, or incur costs related to, The Local Car Wash, Inc.'s unpaid tax liability. (*Id.*, Ex. D, at 67).

The parties' escrow agreement provided for $150,000 of the $1.2 million purchase price to be placed with an escrow agent "to pay any [u]npaid [t]ax [l]liability not paid at [s]ettlement to the appropriate government agencies."  (*Id.*, Ex. D, at 68); (*see also id.* at 67 (defining unpaid tax liability as "[s]ales and [u]se [t]ax, related late penalties and charges, related interest, and any other expenses or fees in connection with unpaid [s]ales and [u]se [t]ax" related to the operation of The Local Car Wash, Inc.)).  The escrow agreement further provided that the

escrowed funds would be released by the TFB entities, and the unpaid tax liability paid by the escrow agent, after—*inter alia*—receiving documentation from the tax authorities showing the amount of taxes owed. (*Id.*).

Ultimately, the parties closed on the sale of the car wash on December 18, 2020, and the TFB entities commenced this action in state court less than one week later on December 23, 2020. (Doc. 1 (containing the notice of removal to this court, filed on January 21, 2021)). As a result, the TFB entities never made the first monthly payment under the promissory note, which was due on February 1, 2021, or any subsequent monthly payment, which was due on the last day of each succeeding month.

Approximately six months later, in June 2021, the defendants requested release of the escrowed funds to pay The Local Car Wash, Inc.'s unpaid tax liability. (Doc. 133-2, Ex. F, at 79). On July 2, 2021, however, the TFB entities refused to release those funds based upon, *inter alia*, their contention that they had not been provided with the appropriate documentation from the tax authority as required by the parties' escrow agreement, and based upon their contention that the escrowed funds

were subject to rescission.  (*Id.* at 79–80).  The defendants assert that,
because the TFB entities refused to release the escrowed funds on July
2, 2021, they have incurred additional penalties and interest on the sales
and use taxes owed by The Local Car Wash, Inc., which—they argue—
they would not have incurred but for the TFB entities' refusal to release
the escrowed funds. (Docs. 133 (representing that they have incurred
$5,952.67 in additional penalties and interest); 137 (explaining that the
additional penalties and interest continue to accrue); 141 (representing
that, as of July 29, 2024, the additional penalties and interest have
accrued to a total amount of $8,065.40)).

While it is unclear when, exactly, the plaintiffs received
documentation from the taxing authority,[3] the defendants have
submitted a "Certified Copy of Lien" from the Pennsylvania Department
of Revenue, which is dated July 6, 2021, and stamped August 4, 2021.
(Doc. 133-2, Ex. G, at 86).  This document reflects that, for the relevant
period (*i.e.*, 2017 to 2020), The Local Car Wash, Inc. owed $81,215.45 for

---

[3] The plaintiffs continue to argue that the defendants did not provide the
necessary documentation from the taxing authority, as required by the
parties' escrow agreement. (*See, e.g.*, Doc. 142 at 4, 8).  The issue at this
point in the litigation, however, is the amount of damages owed to the
defendants.

unpaid taxes, interest, and penalties. (*Id.*). In addition to this lien, the defendants have also submitted a copy of a notice of entry of judgment wherein The Local Car Wash, Inc. was "notified that a judgment in the amount of $81,215.45 [had] been entered against [it] on August 4th, 2021[,] in the Court of Common Pleas of Franklin County Prothonotary's Office[.]" (*Id.*, Ex. G, at 85 (naming the plaintiff as the Pennsylvania Department of Revenue, and the defendants as The Local Car Wash, Inc. and Sharpe J. McDowell)).

After litigating these issues for over a year, the parties filed summary judgment motions. (Docs. 77, 78). The court determined that the defendants were entitled to summary judgment on the plaintiffs' claims as well as on their counterclaims against the plaintiffs. (Docs. 99, 100). Following the court's denial of the plaintiffs' motion for reconsideration (Doc. 105), the court ordered the parties to consult and confer on the issue of damages. The defendants then moved to amend their counterclaims to include a claim for attorney fees, which the court denied. (Doc. 127). The parties were again directed to consult and confer on the issue of damages and subsequently submitted a joint status report to the court. (Doc. 130). After a conference with the parties, during which

the court ordered briefing on the issue of damages, the parties submitted their respective briefs.  (Docs. 133–35).  They have since submitted supplemental briefs.  (Docs. 137–38, 141–42).

In essence, the defendants contend that they are entitled to the following damages: a total of $108,000 for breach of the promissory note, which includes $100,000 in principal, $3,000 in interest, and $5,000 in late charges; release of the full $150,000 in escrowed funds for breach of the escrow agreement; and damages for the additional penalties and interest incurred on the sales and use taxes owed by The Local Car Wash, Inc., which—they argue—they would not have incurred but for the plaintiffs' refusal to release the escrowed funds on July 2, 2021.  (Docs. 133, 135, 137); (*see also* Doc. 141 at 1 (representing that, as of July 29, 2024, the additional penalties and interest incurred on the sales and use taxes has accrued to a total amount of $8,065.40)).

The TFB entities do not dispute that the defendants are entitled to $100,000 for breach of the promissory note. However, they dispute the payment of late charges and interest on the promissory note, as well as any payment under the escrow agreement, including the additional amount of damages for penalties and interest incurred on the sales and

use taxed owed by The Local Car Wash, Inc. (Docs. 134, 138, 142). Thus, this damages issue, which has been fully briefed by the parties, is ripe for the court's resolution.

### III.   Discussion

This action was removed to federal court, and our jurisdiction is based upon diversity of citizenship. (*See* Doc. 1). "Where, as here, jurisdiction is based upon diversity, a federal court should apply the choice of law rules of the forum state." *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 415 (W.D. Pa. 2005) (citations omitted). In Pennsylvania, courts generally uphold the parties' intent "and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)). Here, the promissory note is governed by Virginia law, and the escrow agreement is governed by Pennsylvania law. (Doc. 133-2, Ex. C, at 62; *id.*, Ex. D, at 71). Accordingly, the court will honor the parties' choice of law provisions.

A. <u>The Defendants are Entitled to Damages Totaling $105,252.88
for Breach of the Promissory Note</u>

Here, the court granted summary judgment in favor of the
defendants on Counterclaim I concerning the plaintiffs' breach of the
parties' promissory note based upon the plaintiffs' failure to make any
payments to the defendants under the promissory note. (Docs. 99, 100).
Thus, the question before the court is the proper amount of damages owed
to the defendants in light of the plaintiffs' breach. Under Virginia law,
the proper measure of damages for a breach of contract "'is the sum that
would put [the non-breaching party] in the same position, as far as money
can do it, as if the contract had been performed.'" *Nichols Const. Corp. v.
Virginia Mach. Tool Co., LLC*, 661 S.E.2d 467, 471 (Va. 2008) (quoting
*Estate of Taylor v. Flair Property Assocs.*, 448 S.E.2d 413, 414 (Va.
1994)); *see McDevitt & St. Co. v. Marriott Corp.*, 911 F.2d 723 (4th Cir.
1990) (stating that "[i]t is black letter law that damages for a breach of
contract are intended to put the non-breaching party in the position he
would have been in had the breach not occurred" (quoting *Appalachian
Power Company v. John Stewart Walker, Inc.*, 201 S.E.2d 758, 767 (Va.
1974))).

As mentioned above, the TFB entities do not dispute that the defendants are entitled to the $100,000 principal amount due under the promissory note. The TFB entities dispute, however, whether the defendants are entitled to the $3,000 in interest or the $5,000 in late charges. In support, the TFB entities argue that: with respect to the $3,000 in interest, the defendants would be entitled, at most, to the amount of interest owed up to the date a judgment is entered by the court; and, with respect to the $5,000 in late charges, they argue that such charges constitute special damages that must have been included, but were not, in the defendants' pleading. The court addresses the plaintiffs' arguments in turn.

### 1.   The Interest

Regarding the $3,000 in interest, the court finds that the plaintiffs' argument is unavailing. As an initial matter, the court observes that the plaintiffs have not cited to any authority, or to any language contained in the parties' promissory note, which would limit the defendants' recovery to an accrued amount of interest—that is, to the amount of interest owed up to the date a judgment is entered by the court, rather than the entire $3,000.

Furthermore, the court observes that the object of Virginia law in awarding damages in a breach of contract action is to put the injured party in the same position as it would have been had the contract been performed. Here, the promissory note provides for a $100,000 principal amount with a three percent interest rate to be paid over eight years (Doc. 133-2, Ex. C, at 40, 61), and requires equal monthly payments of principal and interest in the amount of $1,072.92, with the first payment due on February 1, 2021, the same monthly payment due on the last day of each succeeding month, and all principal and interest due and payable in full on February 1, 2029 (*id.* at 61). Accordingly, the court finds that, if the parties' promissory note had been performed, the defendants would have received, in equal monthly payments of $1,072.92, the entire $100,000 in principle plus $3,000 in interest.

In addition, the court finds that the parties' promissory note does not provide that, in the event of default, only the principal and accrued interest up to the date of judgment would become immediately due and payable. Rather, the promissory note suggests that the *entire* principal and interest would be accelerated and become "immediately due and payable[.]" (*See, e.g., id.* at 40 (defining "the amount" of the promissory

note as $100,000 in principal and a three percent interest rate over eight years); *id.* at 61 (stating that the payor, TFB Midatlantic 4, LLC "promises to pay" the creditor, Treanor Properties, LLC, "the sum of One Hundred Thousand and no/100 Dollars ($100,00.00) with total interest at the rate of Three Percent (3.0%) over the tenure of the loan over a period of Eight (8) years (the 'Note'))"; *id.* at 62 (providing that the "Note" would become "immediately due and payable" upon the occurrence of an "Event of Default")).

Finally, in light of the foregoing, the court observes that there is authority suggesting that the acceleration of the principal and interest in the matter *sub judice* is consistent with Virginia law. *See generally Nickels v. People's Building, L. & S. Ass'n*, 93 Va. 380, 386 (Va. 1896) (explaining, as follows: "[a] provision in a contract, not that the amount of the debt should be increased, but that in a specified event the time for the payment of a certain sum due shall be accelerated, does not create a penalty or forfeiture against which a court of equity will relieve"); *Fant v. Thomas*, 131 Va. 38 (Va. 1921) (citing *Nickels* and discussing the same

principles).[4]  As such, the court concludes that the defendants are entitled to the full $3,000 in interest pursuant to the parties' promissory note.

### 2. <u>The Late Charges</u>

Regarding the $5,000 late charges under the parties' promissory note, the court finds that the plaintiffs' argument concerning the alleged insufficiency of the defendants' pleading is unpersuasive.[5]  While the plaintiffs broadly assert that the late charges constitute special damages under Rule 9(g) of the Federal Rules of Civil Procedure and must have,

---

[4] As stated above, the plaintiffs have not cited to any authority, or to any language contained in the parties' promissory note, which would limit the defendants' recovery to only an accrued amount of interest.

[5] The court notes that the plaintiffs previously represented that they were not disputing the late charges under the parties' promissory note. More specifically, the parties' November 13, 2023 joint status report provides, in relevant part, as follows:

> The only remaining issue contested by Buyers with respect to Counterclaim Count I, and one that Buyers believe does not warrant a hearing, is whether Sellers are entitled to any (or all) of the $3,000 in interest. Buyers agree that the contract provides for payment of the $100,000 accelerated principal and $5,000 late charges, thus $105,000. Buyers do not believe Sellers are entitled to an additional payment of $3,000 in interest under the contract.

(Doc. 130 at 2).  The plaintiffs have seemingly changed their position on the late charges.  (Docs. 134, 142).

therefore, been included as a specific item of damages in the defendants' pleading, the plaintiffs fail to set forth any meaningful explanation concerning how the late charges constitute special damages. (Docs. 134, 142). In addition, the court fails to discern how the late charges could be characterized as special damages because they are not *so* unusual or unordinary for the conduct alleged or for the claim in question. *See, e.g.*, *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (providing that "Federal Rule of Civil Procedure 9(g) requires that 'special' damages, namely, those that are not the 'ordinary result' of the conduct alleged, 'shall be specifically stated'" (citations omitted)). As such, the court finds that the defendants' request for late charges is not subject to the heightened pleading requirements of Rule 9(g).

Additionally, the court finds that the general pleading requirements of Rule 8 do not require the defendants to specifically identify the late charges as an item of actual damages in their prayer for relief. Indeed, Rule 8(a)(3) merely provides that a complaint must contain "a demand for relief sought." Fed. R. Civ. P. 8(a)(3). This Rule does not require damages to be pled with exacting specificity. *See*, *e.g.*,

*Sheet Metal Workers Loc. 19 v. Keystone Heating & Air Conditioning*, 934 F.2d 35, 40 (3d Cir. 1991) (providing that "Rule 8(a)(3) of the Federal Rules of Civil Procedure does not require that the demand for judgment be pled with great specificity" (citation omitted)).

Accordingly, the court concludes that the defendants' Counterclaim I is broad enough to encompass the relief requested. (Doc. 49 at 39–40 (setting forth allegations concerning, *inter alia*, TFB Midatlantic 4, LLC's failure to make any payments under the promissory note and requesting "that this Court enter judgment in their favor and against TFB Midatlantic 4, LLC in an amount to be determined at trial and award Defendant all other relief as is just").

That said, however, the court finds that the defendants are not entitled to the entire $5,000 in late charges that they seek under the parties' promissory note. As discussed *supra*, the parties' promissory note provides for a $100,000 principal amount with a three percent interest rate to be paid over eight years (Doc. 133-2, Ex. C, at 40, 61), and requires equal monthly payments of principal and interest in the amount of $1,072.92, beginning on February 1, 2021, and ending on February 1, 2029 (*id.* at 61). In addition, the parties' promissory note provides that,

17

in the event "any payment" due under the note is not received within 30 days of the due date, then late charges equal to five percent of "such payment" are due on demand.  (*Id.*).

Having reviewed this language, the court finds that, while the total sum of the parties' promissory note includes the entire principal and interest, it does not include all late charges.  Specifically, the parties' promissory note does not provide that *all* late charges will be accelerated and included in the total amount that is due and payable upon the occurrence of an event of default.  Instead, the parties' promissory note provides that the late charges are specific as to *each* payment due.  Accordingly, the court concludes that the defendants are entitled only to the late payments calculated up until the date of the court's accompanying judgment—*i.e.*, $2,252.88.[6]

---

[6] This calculation accounts for five percent of the monthly payment (*i.e.*, $1,072.92 multiplied by .05 = $53.64) multiplied by 42 months (February 2021 to January 2022, February 2022 to January 2023, February 2023 to January 2024, and February 2024 to July 2024), which equals $2,252.88. August is not included in this calculation because, per the language of the parties' promissory note, the equal monthly payments in the amount of $1,072.92 were due "on the last day" of each succeeding month.  (Doc. 133-2, Ex. C at 61).

**B. The Defendants are Entitled to Release of the Escrowed Funds to have the Escrow Agent Pay the Pre-Existing Tax Liability Including Penalties and Interest, and to the Remainder of the Escrowed Funds, Plus Damages in an Amount Equal to the Additional Penalties and Interest Incurred on the Pre-Existing Tax Liability**

Here, the court granted summary judgment in favor of the defendants on Counterclaim II concerning the plaintiffs' breach of the parties' escrow agreement when the plaintiffs refused to release the escrowed funds to pay The Local Car Wash, Inc.'s pre-existing tax liability. (Docs. 99, 100). As discussed *supra*, the parties' escrow agreement provides for $150,000 of the $1.2 million purchase price to be placed with an escrow agent "to pay any [u]npaid [t]ax [l]iability not paid at [s]ettlement to the appropriate government agencies." (Doc. 133-2, Ex. D, at 68); (*see also id.* at 67 (defining unpaid tax liability as "[s]ales and [u]se [t]ax, related late penalties and charges, related interest, and any other expenses or fees in connection with unpaid [s]ales and [u]se [t]ax" related to the operation of The Local Car Wash, Inc.)). The escrow agreement further provides that the funds would be released by the TFB entities, and the unpaid tax liability paid by the escrow agent, after—*inter alia*—receiving documentation from the tax authorities showing the amount of taxes owed. (*Id.*).

The defendants contend that they are entitled to release of the full $150,000 in escrowed funds for breach of the escrow agreement plus damages for the additional penalties and interest incurred on the sales and use taxes owed by The Local Car Wash, Inc., which, they argue, they would not have incurred but for the plaintiffs' refusal to release the escrowed funds on July 2, 2021.

The TFB entities argue that the defendants had a duty to mitigate their damages and failed to do so. More specifically, the TFB entities assert that the defendants should have paid the unpaid tax liability with the money Treanor received at settlement. Thus, the TFB entities contend that the defendants are not entitled to any money damages under the escrow agreement.

The court, having reviewed the parties' arguments and the record in this matter, is persuaded by the defendants' contentions. In June of 2021, the defendants requested that the plaintiffs consent to the release of the escrowed funds to pay the outstanding tax liability owed by The Local Car Wash, Inc. At the time of that request, The Local Car Wash, Inc. owed $81,215.45 in unpaid tax liability to the Commonwealth of Pennsylvania, which included taxes, interest, and penalties. (Doc. 133-2,

Ex. G, at 86).  On July 2, 2021, however, the plaintiffs refused to consent to the release of the escrowed funds, and, as a result of their refusal, the defendants incurred additional penalties and interest on the sales and use taxes owed by The Local Car Wash, Inc.  Those penalties and interest have continued to accrue.  (*See* Docs. 133 (representing that the defendants have incurred $5,952.67 in additional penalties and interest); 137 (explaining that the additional penalties and interest continue to accrue); 141 (representing that, as of July 29, 2024, the additional penalties and interest have accrued to a total amount of $8,065.40)).

Thus, based upon the foregoing, the court concludes that the defendants are entitled to the release of the full $150,000 in escrowed funds—with the funds being used to pay The Local Car Wash, Inc.'s pre-existing tax liability in the amount of $81,215.45, as well as the additional penalties and interest incurred on that amount, and the remainder of the funds being released to the defendants—plus an award of damages in the exact amount that The Local Car Wash, Inc. incurred in additional penalties and interest on the pre-existing tax liability.

In reaching this conclusion, the court finds that the plaintiffs' argument, that the defendants had a duty to mitigate damages with

Case 1:21-cv-00299-DFB   Document 144   Filed 08/21/24   Page 22 of 24

respect to the parties' escrow agreement, is unavailing. While Pennsylvania law imposes a general duty on plaintiffs to mitigate their damages, "Pennsylvania law treats mitigation as an affirmative defense on which the breaching party bears the burden of proof." *Walney v. SWEPI LP*, 596 F. Supp. 3d 544, 554 (W.D. Pa. 2022) (citing *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008)). To prevail on such a defense, the breaching party must show "'(1) what reasonable actions the [non-breaching party] ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced.'" *Walney*, 596 F. Supp. 3d at 554 (quoting *Prusky*, 532 F.3d at 258–59). However, Pennsylvania law also provides that "a non-breaching party's duty to mitigate is limited when . . . 'it is equally reasonable to expect the [breaching party] to minimize damages' and the breaching party has 'equal knowledge of the consequences of nonperformance.'" *Toshiba America Medical Systems, Inc. v. Valley Open MRI and Diagnostic Center Inc.*, 674 F. App'x 130, 132 (3d Cir. 2016) (nonprecedential) (quoting *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 530 (3d Cir. 1978)).

Here, the plaintiffs argue that the defendants could have avoided the additional penalties and interest on the sales and use taxes owed by The Local Car Wash, Inc., had Treanor used the proceeds of the settlement to pay the outstanding sales and use taxes. The court cannot conclude, however, that this would have been a reasonable action that Treanor should have taken to mitigate damages. Indeed, the parties had specifically entered into the escrow agreement and placed a portion of the $1.2 million purchase price into an escrow account for the payment of The Local Car Wash, Inc.'s unpaid tax liabilities, including penalties and fees. Moreover, the TFB entities knew as early as July 2021 that nonpayment of the unpaid tax liability could result in additional penalties and fees. (*See* Doc. 133-2, Ex. F, at 82). Accordingly, the court concludes that the defendants did not have a duty to mitigate damages by paying the unpaid tax liability with the settlement funds to avoid any additional penalties and interest.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the court concludes that the defendants are entitled to the following on their counterclaims: on Counterclaim I, breach of the promissory note, the defendants are entitled to an award of damages in the amount of $105,252.88; and on Counterclaim II, breach of the escrow agreement, the defendants are entitled to the release of the full $150,000 in escrowed funds—with the funds being used to pay The Local Car Wash, Inc.'s pre-existing tax liability in the amount of $81,215.45, as well as the additional penalties and interest incurred on that amount, and the remainder of the funds being released to the defendants—plus an award of damages in the exact amount that The Local Car Wash, Inc. incurred in additional penalties and interest on the pre-existing tax liability.

An appropriate order follows.


Dated: August 21, 2024.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
United States Magistrate Judge

24